Good afternoon. We are ready for case number 414-0228, People of the State of Illinois v. Scott Palen. For the appellant, we have Mr. Wilson, and for the appellee, we have Mr. Zimmerman. Are you ready to proceed, counsel? Please do so. May it please the court. Good afternoon, your honors. My name is Ryan Wilson. I represent Scott Palen on behalf of the Office of the State Department of Defender. I'll primarily be addressing Argument 1 today. Certainly, if the court has any questions about the other arguments, I'm happy to answer those. Illinois courts have clearly stated that in a criminal jury trial, jeopardy attaches when a jury has been empaneled and sworn. In this case, on September 30, 2013, the state was represented in court by Assistant State's Attorney Karen Tharp and Assistant State's Attorney Stephen McClure. The defense and the state selected eight jurors that day in panels of four, and after each panel was selected, the judge swore those jurors and released them. The judge even recorded in the docket entry, jury trial begins. The judge was acknowledging that jury trial had started. The following day, court reconvened, and the court advised the parties that Assistant State's Attorney Tharp was not present in the courtroom because her father had passed away. The state was represented by Assistant State's Attorney Stephen McClure, and Mr. McClure didn't express any concerns about continuing with jury trial. He didn't say he wasn't ready. He didn't say that he didn't feel prepared. The Segment County State's Attorney didn't appear and inform the court that, for whatever reason, the state wasn't prepared to continue with trial in Ms. Tharp's absence. In spite of there being no reason for the declaration of a mistrial, the court concluded that Mr. Palin's case, and the specific situation it was presented with, would not be the best way for Mr. McClure to do his first felony trial by himself, and as a result, it declared a mistrial. Was the jury present at this point? It was not. The jury had not been brought back into the courtroom yet. Couldn't the defendant have then said, wait a second, Judge, this is a pretty serious business, and since the jury isn't present anyway, this is more preliminary order by the court, and say, the defendant objects to this, and we think we should go with the people who have already been sworn? Defense counsel could have made an objection at that time and didn't. I would argue, though, that given the conclusory nature of the court's findings, that an objection really wouldn't have done any good in this situation. The court didn't ask for input from anybody. Again, didn't ask Mr. McClure if he was unprepared. The court came in, noted that Ms. Tharp was not there, and said, because of, essentially, the court didn't want Mr. McClure to have a bad experience with his first criminal jury trial, it was going to declare a mistrial. It wasn't the sort of thing where the court was asking for input from anybody. Well, you may be right that this was a done deal, but to what extent should the defendant be held to raising something about it, some objection, some suggestion that we need you to continue on with this? We've had two panels of this jury already sworn. And let's see what the record, maybe your suggestion would be correct, say, no, I'm sorry, I've already ruled, and that's the way it's going to be. The judge was under an obligation, just as everyone was in the courtroom, to preserve the defendant's rights. Now, defense counsel did file a motion raising the double jeopardy. I clearly thought what it was doing in this instance wasn't a violation of the defendant's rights. I suppose my point is, shouldn't it be incumbent upon the defendant to say, wait a minute, this is not a good thing, judge, we object, jeopardy attached, and don't do this. Well, defense counsel didn't do that at that point, but they did include this issue in the post-judgment motion following Scott's second trial. During the hearing on that motion, nobody even mentioned this issue. Why didn't they raise it then? Why didn't they raise it prior to the start of the trial? I'm not sure that the defense counsel believed that it was necessary that it be raised, nor am I convinced that it was necessary that it be raised prior to the second trial. Well, the point is, if they had raised it and the judge had ruled that jeopardy attached, there wouldn't be a need for a second trial. That is absolutely correct, but I don't know that raising it after his second trial forecloses the defense from asserting that there was the double jeopardy issue. Did you find any cases to support that? The People v. Largent case that was a case out of this court, the court addressed the double jeopardy error in that case as plain error, but before doing so, the court specifically stated, we are addressing this issue as plain error. I believe I have a quote here. Yes. Therefore, under Rule 615A, we may consider a claim of double jeopardy even though the defendant failed to assert that claim by a post-trial motion after his or her second trial. Now, the inference that I received from that is that had defense counsel filed a post-trial motion asserting a double jeopardy error following his second trial, that that issue would have been preserved, and therefore the court would not have to endeavor to determine if the counsel did a plain error. Okay. I want to ask you a question. Prior to the beginning of jury selection, Judge Reyes told everybody in the courtroom that they were going to be selecting 12 jurors and two alternates, and only eight jurors were selected and sworn. So what case do you have to rely on that that constitutes the impaneling of a jury? There are, I believe, numerous cases cited throughout the brief that talk about the fact, and it's the only definition I can find of when jeopardy attaches is when a jury is impaneled and sworn. Even though it was just eight jurors that had been impaneled and sworn up until that time, it was a jury that had been impaneled and sworn. Well, what constitutes a jury? In this case, what constituted a jury? A member of the defendant's peers who were sat to hear his case. A member? One person constitutes a jury? I would say it would have to be more than one, because the law generally says a jury of your peers, and jury to me implies plural. That, however, was a decision for Mr. Palin to make. Okay, what case did you find, if any, that held when a less than 12 person jury was selected and sworn? Let me start over. Less than 12 people were selected and sworn, let's say, as in this case, eight. So jury selection was not completed. Do you find any cases that say that constitutes the impaneling of a jury? In other words, did you find any cases that involved a shortage? I did not find any case directly on point with this, which makes this issue fairly novel. I will say, I'm not trying to split hairs with Your Honor. When you say a case that says that eight jurors were impaneled, impaneling is... No, no. Oh, I'm sorry. I may have misspoken. Selected. Eight jurors selected and sworn. The jury is not yet impaneled, is what I'm getting at. Did you find any cases that say when you swear a partial jury, eight people, you're not finished, that that constitutes the impanelment of a jury? I have not found a case that says that. The state decided to the People v. Lib case, a First District case, which it said was directly on point. It's not, but it might offer a little bit of insight into this issue. In People v. Lib, eight jurors were selected and then the mistrial was declared. And the defendant asserted, well, that violated my double jeopardy right. And the court said, no, it didn't, because those jurors weren't impaneled and sworn. The inference from that case to me is, had those eight jurors been sworn, that would have constituted a jury for purposes of double jeopardy. Well, following up on Justice Pope's question, couldn't the defendant have said when the trial court here said I'm going to declare a mistrial, say, well, Judge, we've got eight jurors already selected and sworn here. And we would like to have these people constitute the jury in this case. And it's the defendant's choice to have a jury of eight or at least less than 12. So that's what we'd like. So please don't declare a mistrial. I suppose the defense could have said that. Does his failure to do that weaken his case? I don't believe so. And the reason why I cited to a United States v. Davis case, or, yeah, United States v. Davis, a federal case in the briefs. Admittedly, it is factually different than the case we have here,  In Davis, 12 jurors had been selected and sworn. Two jurors, after the state's opening statements, came to the court and said, we have grave concerns about continuing on this jury. And the court, after speaking with the jurors, agreed with them, that maybe they shouldn't be on the jury. And, in fact, he decided that they shouldn't serve on the jury. The court then did what the court here should have done. The court in Davis endeavored to find a way that the jury trial could continue. The court thought to itself, and it's in the record, the court said, I contemplated having the court services reopen Boyd-Dyer and select two additional jurors. But I didn't think that was proper because the existing jurors had already heard opening statements. So I didn't want to do that. Then the court went to the defendant and said, defendant, this is the situation. Would you agree to proceed to trial with ten jurors? And the defendant said no. Left without any other alternative, the court declared a mistrial. And there was a manifest necessity for that mistrial. A case like Davis stands in sharp contrast to the case we have here. And I say that in part by pointing to the manifest necessity standard that was cited in the briefs. But do we even get to that standard if double jeopardy did not attach? I mean, you know, the big difference in Davis' case is they sworn and paneled a 12-person jury. Right. Well, I think the idea is that a defendant is entitled to be tried by the jury that he has chosen. And Scott, the defense in the state, selected eight jurors. My recollection is that they were from a broad swath of, you know, different educational and occupational backgrounds. This was the jury that he wanted. And for the court to come in and essentially nullify this jury that had been impaneled and sworn by the court. You keep saying impaneled and sworn. Yes. The jurors were sworn. The definition, at least in Black's Law Dictionary, I couldn't find in the- The term is jury is impaneled and sworn. Correct. Not juror. Or jurors. So the jury is impaneled and sworn. And my position would be that this was a jury of eight. It may have been a jury, but was it the jury? I mean, it sounds like I'm being overly technical, but when you say the jury, the jury selected to try this case, which the selection process had not been completed. The selection process had not been completed to the degree that the court- To select the jury. It may not have been, as Justice Pope pointed out, the jury that the court anticipated would have been selected. The court said 12 and two alternates. But it was the jury that up until that point had been sworn and the jury that Scott had chosen. A defendant in Illinois has the right to proceed to a jury trial with less than 12 jurors. That was not the intent here. The trial judge announced that there would be 12 jurors selected plus two alternates. And that's absolutely true. All I am saying is that when you have a decision of declaring a mistrial, which it might be a very minor point, but I would argue you can't have a mistrial without having jeopardy have attached. It seems to me like the trial court believed that jeopardy had attached here. But before declaring a mistrial in a case like this- Yeah, you can have a mistrial without- It happens all the time. I guess I'm thinking more of like the People v. Lip case where what the court essentially said was, well, the jury hadn't been sworn, so we'll just go ahead and continue this. We'll reset it for trial and have it in the state. It's not that the jury selection process and something bad happens or a prospective jury says something terribly prejudicial. I've declared a mistrial as a trial judge. I agree with that.  But where the jury has been sworn, where the jurors have been sworn, I think that takes it out of the realm of a case where because of an error, the case can be sent over and retried on another day. Let me ask you a different sort of question that's a little bit odd. You've been at this now for a while, Mr. Wilson, and I'm wondering what happened and why it happened here. That is, we have a trial court that is selecting jurors in panels of four, as I recall, and selects a panel of four jurors and swears them to be the jurors in the case and releases them. Another panel of four swears them to be jurors in the case and releases them, breaks for the day, and then we have the other panels. To what extent, in reading records, have you encountered this strange procedure before where the trial court is swearing panels as they are selected as opposed to swearing the entire jury, all 12 of them, let's say, which would be the norm, I would think. Is this something that's going on and I've just missed it? Not that I'm aware of. This is the first case that I can remember seeing this. I was writing my notes out, and sometimes I think, when I'm going to argue a case, how would I explain it to a friend of mine who wasn't a lawyer? Over a beer, the rest of us. And that may very well be. That may very well be. And I think the theme that I would use when I was explaining it to a friend is, the court messed this up, that the court should not have sworn these jurors. And I understand why the court did it. The court had selected these jurors in panels of four and didn't want them sitting around for the rest of the day while jury selection was ongoing. Well, you're too generous. I don't understand that. You've got close to 40 years, or maybe even more, I don't know, trial experience here. I was a trial judge for 12 and a half and dozens, maybe in the three figures of juries, could easily have been during that period of time. I never swore a jury. Right. I'd say, okay, folks, you're excused and come back tomorrow and the rest of the jury is selected, and then you'd swear the jury. So I'm wondering, what's going on here? And that I have no idea. The one thing I do know, and the thing that I think outrages me more about this case than anything else, is the fact that as a result of this mistrial, Mr. Palin went and sat in jail for another 42 days. As a result of the court finding that this wouldn't be the experience that it wanted Mr. McClure to have, it kicked his trial over to another trial calendar and he had to go back and sit in jail for 42 days. Well, counsel, have you looked at how other jurisdictions, although it may not be binding on this court, have dealt with this issue? I believe I saw some in passing while I was doing my research for the briefs. I don't recall any off the top of my head, though. Do you recognize Wayne Lefebvre as an expert on criminal procedure? I've cited his treatises to this court before. Did you check his treatise on this issue? I don't recall if I did or not. Well, he says, jeopardy attaches in a jury trial only after jury selection is complete and the judge has sworn the entire jury, including any alternate jurors. And I guess my response to that would be, here in Illinois where a jury can be less than 12 if the defendant so chooses, the problem I have with this case is Scott wasn't given that option. But he didn't speak up and say, I'd like to be tried by eight jurors. And even if he had, the trial judge is not bound to give him that, right? Without agreement by the state? I think at that point there's a compelling argument that, well, no, the state doesn't need to object to it. Or the state has no say in it. If the defendant wishes to proceed to trial with a jury of less than 12, the state cannot object to that in any meaningful way. But your client never asked to proceed with a jury of less than 12. And frankly, I think he never asked to proceed with a jury because the court never advised him that that was an option. Again, citing back to that Davis case. He was represented by counsel. His attorney didn't do it either. As I explained in the briefs, there are still a number of reasons why this issue should be reviewed, even though defense counsel didn't object at that time, including being reviewed because of plain error here. Again, turning this court's attention to the Delargent case, which was out of this court, the court said that a conviction that violated double jeopardy is a substantial injustice that may be reviewed as plain error. Are you raising the plain error now? Yes. Yes, plain error has been raised in this case. What about ineffective assistance of counsel? Are you raising that? Ineffective assistance of counsel has not been raised in this case, no. It's proceeding purely on a plain error analysis. There is a procedure in Illinois. In order for there to be a manifest necessity, and I realize, Justice Holder White, your point a while ago that maybe we don't even get to manifest necessity, but under standard of manifest necessity, a judge should not foreclose a defendant's option to be tried by a particular jury unless a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceeding. That's exactly what happened here. There was no showing of any manifest necessity, and the court, just because it was concerned that an assistant state's attorney, who expressed no doubt in his ability to continue with trial, or even, let's step back for a minute. Let's not even talk about continuing with trial. There was no reason that the court couldn't have continued to select four more jurors to sit on this jury to join the other eight that had already been selected. There's no reason why Boyd Dyer couldn't have been reopened or Boyd Dyer couldn't have continued with this jury. This was also due to the unfortunate death of Ms. Parks' father, right? It was, yes. Now that's the kind of event that has happened in lots of our lives, and typically a week later, we're back and ready to go, aren't we? That's correct. Does the trial judge in this case suggest that, gee, how about we continue it for a week? The court did not. The court said that it was going to give Mr. Palin a new trial date. Ms. Tharp will probably be back. May I continue? Yes, you may. I'm sorry, thank you. Ms. Tharp should be back. They said, you know Ms. Tharp, she should be back in seven to ten days. We'll reset it at that point. But no, the judge didn't move to continue it or anything. Thank you, counsel. You'll have more time on rebuttal. Thank you. Are you ready to proceed, Mr. Zimmerman? You may do so. May it please the court. Counsel. Good afternoon, Your Honors. My name is John Zimmerman. I'm from the 4th District Public Prosecutor's Office. From the previous discussion you were having with counsel, I think the main issue in this case is what is the jury in this case. The state's position is that the jury needed to consist of 12 jurors that were empaneled and sworn in order for jeopardy to attach. As Your Honors are aware, the legislature has provided that the jury shall consist of 12 members. The intent of the framers at the last constitutional convention was to maintain that 12 jurors. They, in fact, removed a portion of the Constitution that said a jury between 6 and 12 for certain civil matters. However, since a defendant can waive his right to a trial by jury, he can also waive his right to a trial of 12 jurors. But this waiver must be affirmatively shown on the record. In this case, the defendant never waived his right. He never made any motions, oral or written, to have a jury of less than 12 jurors. Let me ask this question, Mr. Zimmerman, addressing a point that Justice Pope raised. If we assume for the moment the jeopardy attached, is there a manifest necessity shown on this record for the trial court to declare a mistrial? The state's position is that there is, Your Honor. Because you have a senior prosecutor who can't continue for a week, and there's this junior guy. What does this record show about him, other than the judge says this would be your first felony trial? Is that what you said? Yes, I believe that's what the judge stated. That's enough to create a manifest necessity? Well, the state's position is that a manifest necessity was present because of the father's death and the main prosecutor's inability to prosecute the case. She was the one who was at all the prior proceedings. I think Mr. McClure was only there as more of a shadow, not really a second jury. Well, we don't really know, do we? I mean, we don't have any indication by Mr. McClure that he was not prepared to go forward, right? I believe that is correct, Your Honor. When I look back at the proceedings, I'm not sure the exact number of proceedings that Mr. McClure was at, but I don't think it was all of them. Whatever it was, the judge basically assumed that he was not prepared and could not go forward. Is that a fair statement? Yes, that is a fair statement, Your Honor. Wouldn't it be, indeed, not just a better practice, but maybe a required practice before you declare a misdemeanor on these circumstances for the court to turn to Mr. McClure and say, are you prepared to handle this case in the absence of Ms. Tharp? Yes, Your Honor. I do not believe the trial court... Because, for all we know, he might have said, sure. In which case, what have we got then? Yes, unfortunately, the record does not really give us a lot of facts to rely upon. I'm not sure if there were discussions outside the record. It seems to me that there were, based on its conclusory statement. Well, we can't, you know, it's the old story. If it ain't in the record, it never happened. Isn't that the rule? Yes, Your Honor. That is the rule. So what do we make... And the other thing, is there any indication, do you know of any reason why this trial court apparently has the practice, because that's my inference, nothing unusual about this case, of selecting panels of jurors four at a time and then swearing them? Yeah, I am not... Could you actually repeat the specific question? Yeah, have you... Is there some indication in this record as to why the court does that? No. Besides the court's statement to both of the parties of how she did it, she didn't explain why, just how. But I think it is notable that she did state it was going to continue until 14 total jurors were selected, 12 plus two alternates. I think that shows that the parties were aware of that, and if the defendant wanted to raise an issue with that, he could have then stated, well, I'd like to go to jury trial with less than 12 or a specific number. But don't you think it's fair what opposing counsel says? The way the court stated that a mistrial would be declared and that she was setting it over, I mean, it was a done deal. It was quite a conclusory statement. The state does agree with that. But it didn't really invite any response from either party, right? That's correct. But as your honors were stating, the defendant, he didn't just sit quietly there. He said, yes, ma'am. Salutes smartly when the general speaks, right? Yes, but he did state that for the record, and this court and I believe the Supreme Court did held that verbal acquiescence precludes any... Well, let me ask you this. Well, let's define acquiescence. I don't know if that's it. Let me ask you this, Mr. Zimmerman, because I'm a great believer to the extent you can that bright lines are desirable, particularly in criminal procedure. And the bright line is, according to the U.S. Supreme Court, you've impaneled a jury and sworn and, you know, jeopardy attaches. Now we have a situation where what happens if you swear a portion of a jury and maybe that's not all that you intended to be there. But swearing a jury, it seems to me, is a pretty substantial step. That's maybe the threshold to be crossed, just like in a bench trial, the first witness who testifies. Why is that? Well, you have to decide at some point when there's jeopardy attached. I suppose there's a long way of saying, why shouldn't we just draw a bright line and say, judge, don't be swearing jurors because if you do, jeopardy attaches, period. I believe that sounds like a good rule, but in this case, unfortunately, that rule is not present, so we have to go with what we have. And like I previously stated, a jury of 12 is a fundamental principle throughout our legal system. Mr. Zimmerman, did you look for any cases from other states? I did not look for any cases from any other states. And you found no case in Illinois? Well, the cases I did cite in my brief, I believe it was Lipp, as he did distinguish, it was unsure whether they were sworn, but there was also – I'm talking about partial. Oh, partial? Uh-huh. I did not, Your Honor. But I do believe with the sentiment from the treaty that you read. I believe that – You said what? I do believe with the sentiment from the treatise that you read. Sorry if I said treaty. But you didn't find that? No, I did not. I was basing it off of the fact that the jury shall consist of 12, and if the defendant wants to continue with any less, he has to affirmatively waive that on the record. Then we also have the issue of whether the defendant forfeited these claims. The state contends that he did because, as I stated, he verbally acquiesced. He did not file a motion to dismiss prior to the second trial. I think that's also very telling. If he was really concerned about double jeopardy issues, you would think he would raise it prior to the second trial. If jeopardy is attached, though, why wouldn't this be plain error? Well, the state would contend that no error occurred initially. But if we have jeopardy, then you are correct. That's presuming that this would be improper reasoning. So maybe it's a two-prong question. If jeopardy attaches, let's assume that. The second thing is let's assume that what happened here is short of the showing of manifest necessity. So you are correct, Mr. Zimmerman. I need to correct my question accordingly. We have those two things present. Then to declare a mistrial, why would that be plain error and deprivation of the defendant's right not to be held in double jeopardy? Did you say that this fell short of manifest necessity? Yes. Would a plain error apply? This seems to me if those first two hurdles are crossed, we have jeopardy and no manifest necessity, it seems to me this is hard to say plain error wouldn't apply here. Yes, the state does agree with that statement, but as it writes in its brief and does not concede in oral argument, that jeopardy did not attach and the manifest necessity was present. If there's no further questions regarding any other issues, the state rests. I don't see any others. Thank you. Thank you, Your Honors. Any rebuttal, Mr. Wilson? Justice Steigman, I think you hit the nail on the head when you said swearing a jury is a substantial step. And while there is no case directly on point in the state of Illinois that I can find that says that that is such a substantial step that it would indicate that jeopardy had attached, that to me is the rule that should be adopted here. The cases in Illinois say jeopardy attaches when a jury is impaneled and sworn. I can find no case that says jeopardy attaches when a jury of 12 is impaneled and sworn, or where a jury of 12 and alternates are impaneled and sworn. In this case, the defense and the state deliberately selected eight jurors and two panels of four. After those jurors, those specific jurors were selected, the court swore those jurors. This was a jury that was impaneled and sworn. It may not have been a jury of 12, and it may not have been the jury that the court envisioned when the court began Boyd-Ire. But before the court declares a mistrial, the court needed to make sure there was manifest necessity here because jeopardy had attached. The swearing of jurors is not an insubstantial step. It's something that's very important to this system. And when the definition of time regarding when jeopardy attaches is directly affiliated with the time when the jurors were sworn and eight jurors were sworn here, I frankly don't understand how jeopardy could not have attached. As is argued in the brief, this is a case where, at the very least, plain error should apply. I do want to point out just one other thing, the state address forfeiture. In the briefs, the defendant cited to the People v. Enoch and People v. Allman cases, and that's specifically in regard to the fact that this was an issue that was raised after the second trial. Enoch and Allman essentially say that when a defendant makes an objection during trial and that objection is overruled, but he fails to include that in the post-trial motion and assert that that was error, it can still be reviewed on direct appeal because the court has had an opportunity to weigh in on that. The court obviously, when the objection was made, overruled it. The analysis being if it had been raised in the post-trial motion, the court probably wouldn't have changed its mind. Under Enoch and Allman, I would ask this court to still address the claims, even though it was raised, the double jeopardy claims, even though they were raised after the second trial, because the court had already had an opportunity to examine those claims when defense counsel filed its post-trial motion after the second trial asserting the double jeopardy issue. So those claims, I believe, are preserved. The other thing that I just want to say before my time expires, this is a case where the state has forfeited forfeiture twice. The state initially, during the hearing on the post-trial motion, raising double jeopardy after Scott's second trial, never argued that that issue was forfeited for any reason. Then in its initial brief in this court, in responding to the defense arguments, the state doesn't argue that the issue's been forfeited. It's not until the supplemental brief that the state, for the first time, argues forfeiture. Well, because the court asked you both to address the issue, didn't it? Yeah, you absolutely did, but that doesn't mean that it alleviated the state from addressing it in the initial briefs or in the circuit court. The state's attorney forfeited it, and then the state's attorney appellate prosecutor forfeited it here on appeal as well. Are there no further questions? I don't see any. Thank you, counsel. We'll take this matter under advisement. We'll be in recess at this time.